IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRENDA JOANN BIRCKEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 24-CV-149-JFH-GLJ |
| ) | |
| FRANK J. BISIGNANO, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Claimant Brenda Joann Birckel requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the undersigned Magistrate Judge recommends the Commissioner's decision be REVERSED AND REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do h[er] previous work but cannot, considering h[er] age,

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether the correct legal standards were applied. *See Hawkins v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Hum Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Instead, the Court must review the record as a whole, and "[t]he substantiality of

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically sever impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show that there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, U.S. 474, 488 (1951). S*ee also Casias*, 933 F.2d at 800-01.

## Claimant's Background and Procedural History

On February 21, 2017, Claimant protectively applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. (Tr. 67) alleging an onset date of July 6, 2015. (Tr. 67). On October 1, 2018, ALJ Doug Gabbard, II, entered an unfavorable decision which became the Commissioner's final decision and was not appealed. (Tr. 77).

On November 1, 2021, Claimant protectively reapplied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. (Tr. 193-98). Claimant was sixty years old at the time of the administrative hearing and had completed one year of college. (Tr. 34, 193, 224). Claimant alleges an amended onset date of October 2, 2018, continuing through her date last insured ("DLI") of December 31, 2021, due to limitations imposed by major depressive disorder, diabetes mellitus, generalized anxiety disorder, migraine headaches, bursitis of the hips, sinusitis, hypertension, and pain in her back, feet, knees, hands, and shoulders.  (Tr. 238). On October 31, 2023, ALJ James L. Bentley conducted an administrative hearing and entered an unfavorable decision on November 28, 2023. (Tr. 10-19, 34-63). The Appeals Council denied review making the ALJ's November 28, 2023, opinion the Commissioner's final decision for purposes of this appeal. (Tr. 1-2); *See* 20 C.F.R. § 404.971.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. (Tr. 10-19). At step two he determined that Claimant had the severe impairments of chronic thoracic back pain, bursitis of the hips, anxiety disorder, and depressive disorder. (Tr. 12). He found at step three that Claimant did not meet any Listing. (Tr. 13-14). At step four he concluded Claimant had the residual functional capacity ("RFC") to perform medium work except Claimant is unable to climb ladders and scaffolding, was limited to occasional stooping, crouching, and crawling, frequent handling and fingering bilaterally, and must avoid unprotected heights and dangerous moving machinery. (Tr. 14). Due to psychologically-based limitations, the ALJ found Claimant would need to avoid fast paced production jobs with strict quotas but can understand, remember, and apply simple multistep instructions, make simple work-related decisions, concentrate and persist for extended periods to complete simple multistep tasks with routine supervision, and is capable of (i) adapting to routine work settings where changes are infrequent, well explained and introduced gradually, (ii) interacting and responding appropriately to others in a routine work setting on an occasional basis despite needing to avoid interactions with the general public, and (iii) recognizing and avoiding normal workplace hazards. (Tr. 14). The ALJ then concluded that although Claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the national economy, *i.e.*, laundry worker and linen room attendant. (Tr. 18).

## Review

Claimant contends that the ALJ erred in assessing her RFC by: (1) failing to properly analyze Claimant's subjective statements; and (2) concluding claimant could perform the lift requirements of medium work. The undersigned Magistrate Judge agrees with the first contention and finds that the decision of the ALJ should be reversed, and this case remanded for further analysis.

The relevant medical evidence reveals Claimant was involved in a motor vehicle accident in 2009 and underwent a thoracic fusion in 2010 and a spinal hardware removal in 2011. (Tr. 51, 295, 498, 751). Seven years later, in December 2018, Claimant visited her primary care physician, Ashton Clayborne, D.O., reporting hip pain and back pain that radiated into her shoulders after falling twice the previous week. (Tr. 477-87). Dr. Clayborne indicated Claimant experienced chronic thoracic back pain as her baseline, but Claimant reported it was controlled with medication prior to the recent falls. (Tr. 477). Examination revealed thoracic tension and tenderness, mild midpoint tenderness, and tender points over the bilateral trochanters. (Tr. 478). Claimant was assessed with bilateral trochanteric bursitis and bursa steroid injections were administered bilaterally. (Tr. 479).

Thereafter, Claimant generally followed up with Dr. Clayborne monthly through December 2020. (Tr. 387-400, 410-13, 414-16, 424-28, 439-41, 449-50, 472-78). Claimant reported at her March 2019 visit that she would use a back-brace which helped relieve some of her pain and Dr. Clayborne encouraged the continued use of the brace. (Tr. 439). In June 2019 x-rays of Claimant's hips were conducted which revealed "chronic changes consistent with [Claimant's] history of trauma in the accident, but no significant

degeneration/arthritis of the hips themselves." (Tr. 427). Examinations between December 2018 and December 2020 regularly revealed continued thoracic tension and tenderness, tenderness over the bilateral hip bursa, "chronic changes of thoracic paraspinal mm," and paraspinal hypertonicity. (Tr. 309, 332, 383-96, 404-50, 472-73). Claimant was maintained on narcotic medications throughout this period to alleviate her back pain. She often indicated her pain was "fairly controlled" under this medication regimen, but the record reveals she nonetheless had a base level of pain, would report periods of increased pain following physical activity, and on occasion would inquire about dosage changes. (Tr. 308, 331, 370, 378, 382, 387, 410, 430, 449, 472, 477, 494). Following her DLI of December 31, 2021, Claimant continued to seek treatment related to her back and hip pain. (Tr. 498-596, 708-67).

In May 2022, State examiners determined initially and upon reconsideration that there was insufficient evidence to evaluate Claimant's physical and mental abilities prior to her DLI. (Tr. 86-89, 90-95). At the administrative hearing, Claimant testified that between October 2018 through her DLI she had constant pain in her middle to lower back, took narcotics three times a day, and required assistance when showering, bathing, and occasionally dressing her lower extremities. (Tr. 38-39). Claimant indicated she could stand for fifteen minutes at a time, walk only a block, and began using a back brace in 2019 and a cane in 2020. (Tr. 41-44). As to lifting restrictions Claimant testified that Doctor Ronald Woosley restricted her lifting to five pounds but later raised this restriction to 20-

25 pounds.[2] (Tr. 49). Claimant also reported she was unable to lift a case of water or gallon of milk prior to her DLI. (Tr. 49).

The ALJ then elicited testimony from a vocational expert ("VE") to determine what jobs the claimant could perform given the RFC described above. (Tr. 54-63). The VE testified that Claimant could perform the representative jobs of laundry worker I and linen room attendant. (Tr. 59). The ALJ then offered a modified hypothetical in which the individual would be off task 15% of a typical workday. (Tr. 60). The VE testified that Claimant would be capable of performing the representative job of industrial cleaner. (Tr. 60).

In his written opinion at step four, the ALJ extensively discussed Claimant's hearing testimony in addition to Claimant's vehicle accident, the two surgeries that followed, and her visits with Dr. Clayborne through Claimant's DLI. (Tr. 14-16). In discussing Claimant's subjective symptoms, the ALJ found the claimant's description of symptoms and limitations was inconsistent with the record as a whole and was not substantiated by objective findings. (Tr. 15). Specifically, the ALJ recited the following boilerplate language:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

---

[2] The record before this Court does not appear to contain any records or opinions by a Dr. Ronald Woosley.

(Tr. 15). The ALJ then found the opinion of state agency examiners opinion's unpersuasive because the ALJ determined there was sufficient evidence to evaluate Claimant's RFC. (Tr. 17).

Claimant argues that the ALJ erred in assessing her RFC by improperly analyzing her subjective statements in relying solely on boilerplate language. The undersigned Magistrate Judge agrees. The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms.

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. R. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[3] *See also Musgrave v. Sullivan*, 966 F.2d 1371, 1375 (10th Cir. 1992) (The ALJ must "consider (1) whether a Claimant established a pain-producing impairment by objective evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and Claimant's subjective allegations of pain; and (3) if so, whether considering all the evidence, both objective and subjective, claimant's pain is in fact disabling."). Tenth Circuit precedent is in accord with the Commissioner's regulations but characterizes the evaluation as a three-part test. *See e. g., Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v.*

---

[3] SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation "is not an examination of [a claimant's] character." *Id.* at *2.

*Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)).[4] As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. §§404.1529(c)(3), 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures Claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. R. 16-3p, 2017 WL 5180304, at *7-8. An ALJ's symptom evaluation is entitled to deference unless the Court finds that the ALJ misread the medical evidence as a whole. *See Casias,* 933 F.2d at 801.

Claimant contends that the ALJ failed to articulate how the above factors are inconsistent with Claimant's statements and, instead, relied solely on boilerplate language without further explanation. "[A]lthough boilerplate language is disfavored, it 'is problematic only when it appears in the absence of a more thorough analysis.'" *Harris v. Kijakazi*, 2023 WL 4289765, at *6 (E.D. Okla. June 30, 2023) (quoting *Keyes-Zachary*, 695 F.3d at 1170. The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but

---

[4] Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e. g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-594 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna*) and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545-546 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*). This Court agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

simply "recit[ing] the factors" is insufficient. *See* Soc. Sec. R. 16-3p, 2017 WL 5180304, at \*10.  Here, the ALJ cited to SSR 16-3p and 20 C.F.R. §§ 404.1529(c)(3) at the beginning of step four without then *applying* those factors to the evidence.  The ALJ discussed much of the evidence of record predating Claimant's DLI but then failed to conduct any further analysis of Claimant's subjective symptoms with affirmative links to the record. *See Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004) ("In addressing claimant's allegations of disabling pain, the ALJ recited boilerplate language[.] . . . [T]he ALJ failed to link or connect any of the factors he recited to any evidence in the record. He simply recited these factors, then concluded claimant's allegations were not credible. This is precisely the type of conclusion in the guise of findings' rejected in *Kepler* and many cases since; it is not enough for the ALJ simply to list the relevant factors; he must also explain why the specific evidence relevant to each factor led him to conclude claimant's subjective complaints were not credible.") (internal quotation marks omitted); *Kepler*, 68 F.3d at 391 (the ALJ must "explain why the specific evidence relevant to each factor led him to conclude the claimant's subjective complaints were not credible.").

The Commissioner maintains that the ALJ adequately explained his decision in citing to the objective medical evidence, which discussed Claimant's "conservative treatment" and the effectiveness of her medication. These are post-hoc rationalizations which the Court may not accept. *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) ("Affirming this post hoc effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process."). In fact, the ALJ's opinion does not indicate whether he

considered the efficacy of Claimant's treatment, nor does it indicate whether the ALJ determined Claimant's treatment to be conservative.[5] Ultimately, "the court cannot ascertain from the ALJ['s] decision which of plaintiff's subjective symptoms and limitations [the ALJ found] supported or [unsupported] by the objective medical evidence of record. . . . '[T]he ALJ simply listed all the evidence contained in the record and then set forth his conclusion without explaining[.] . . . He did not connect the dots, so to speak, as is required by SSR 96-8p." *Tracy v. Astrue*, 518 F. Supp. 2d 1291, 1298-99 (D. Kan. Sept. 5, 2007). "[I]t is incumbent on the ALJ to comply with SSR 96-8p by providing a narrative explanation for his RFC finding that Claimant can perform [the] work, citing to specific medical facts and/or nonmedical evidence in support of his RFC findings." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *5 (D. Kan. Sept. 11, 2013). The Court must be able to follow the logic, and here it cannot. *See Id.* at *2. As such, the undersigned Magistrate Judge finds that the Commissioner's decision should be reversed, and the case remanded to the ALJ for further analysis.

Claimant also argues the ALJ erred in assessing Claimant's RFC by concluding Claimant could perform the lifting requirements of medium work without medical guidance. Ultimately, it is "the ALJ's responsibility, not a physician's, to assess a claimant's RFC from the medical record." *Berumen v.* Colvin, 640 F. App'x 763, 766 (10th

---

[5] As it pertains to Claimant's treatment, the record reflects Claimant was continued on a routine narcotic pain regimen. The Tenth Circuit has indicated such treatment is not conservative. *See Pickup v. Colvin*, 606 F. App'x 430, 433 (10th Cir. 2015) ("Although her medical treatment was initially conservative after a 2008 workplace injury, over time conservative measures failed and extensive treatment, including a daily narcotic pain regimen, became necessary.").

Cir. 2016) (citing *Chapo*, 682 F.3d at 1288.). "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). Nonetheless, an "ALJ must make specific findings as to RFC and these findings must be supported by substantial evidence[.]" *Adkins v. Barnhart*, 80 F. App'x 44, 48 (10th Cir. 2003) (internal citations omitted). Here, the ALJ discussed Claimant's motor vehicle accident and the surgeries that followed, her visits with Dr. Clayborne which revealed paraspinal hypertonicity, thoracolumbar tenderness and tension, hip pain, chronic back pain, in addition to her medication regimen consisting of steroid injections and routine narcotics. (Tr. 15-16.). Claimant points to no evidence in the record of further lifting restrictions aside from her own assertions, [6] and the longitudinal evidence in the record does not reflect further limitations. In this regard the ALJ clearly considered *all* the evidence in the record predating Claimant's DLI. *Hill v. Astrue*, 289 F. App'x 289, 293 (10th Cir. 2008) ("The ALJ provided an extension discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (quoting *Howard v. Barnhart*,

---

[6] Claimant does note that the ALJ opinion denying Claimant's previous application for benefits discusses a medical source statement completed by Dr. Clayborne in January 2018 in which Dr. Clayborne opined Claimant had pain for several hours after lifting 30 pounds. (Tr. 72). This medical source opinion predates Claimant's alleged onset date and does not appear in the current record.

379 F.3d 945, 949 (10th Cir. 2004). The undersigned Magistrate Judge therefore declines to find error here.

Nonetheless, because the ALJ failed to properly analyze Claimant's subjective symptoms with affirmative links to the record, the undersigned Magistrate Judge recommends this case be remanded to the ALJ for further analysis of *all* the evidence related to Claimant's impairments. If such analysis result in any change to Claimant's RFC, the ALJ should redetermine what work the claimant can perform, if any, and ultimately whether she is disabled.

### Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that the correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen (14) days. Any objections and responses shall each be limited to 10 pages and a reply is permitted only with leave of court upon a showing of good cause.

**DATED** this 12th day of August, 2025.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**